UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RAYMOND LEWIS,

                        Plaintiff,

           - against -

CLARKSTOWN POLICE DEPARTMENT and
SGT. BRIAN GORSKY,

                      Defendants.
------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 3/31/2014

**OPINION AND ORDER**

11-cv-2487 (ER)

Ramos, D.J.:

       Plaintiff Raymond Lewis ("Plaintiff"), currently incarcerated and appearing *pro se*,

brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that his civil rights

were violated while he was in Clarkstown Police Department custody.  Docs. 2, 12.[1]

Specifically, Plaintiff alleges that Sergeant Brian Gorsky ("Gorsky") pepper sprayed him

because, while in pretrial detention, Plaintiff "kept asking to be taken to the hospital."  Doc. 12.

He further alleges that he "did not receive any medical treatment at Clarkstown Police

Department."  *Id.*  The Court reads these allegations as representing claims for (1) the use of

excessive force and (2) deliberate indifference to Plaintiff's serious medical needs.[2]

       Plaintiff brings suit against both the Clarkstown Police Department and Gorsky (together,

"Defendants"), seeking damages in an amount of ten million dollars.  *Id.*[3]  Defendants have

---

[1] Plaintiff's original Complaint was docketed by the Court's *Pro Se* Office on April 4, 2011.  Doc. 2.  The case is currently proceeding pursuant to an Amended Complaint, which was docketed on November 3, 2011.  Doc. 12.

[2] Defendants share the Court's interpretation of the Amended Complaint, and Plaintiff has not disputed that interpretation.

[3] The Amended Complaint also indicates that Plaintiff wants to ensure that other arrestees do not suffer the same treatment he alleges.  Doc. 12.  Although this portion of the pleadings can be read as a demand for injunctive relief, the Court finds that Plaintiff lacks standing to bring such a suit.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105

moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Doc. 39.[4]

For the reasons discussed below, Defendants' motion for summary judgment is

GRANTED IN PART and DENIED IN PART.

## I.      Factual Background[5]

The following facts are undisputed except where otherwise noted.[6]

---

(1983) ("[Plaintiff's] standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers."); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."); *see also Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (finding that a plaintiff lacked standing to seek injunctive relief because he had not "established—or even alleged before this appeal—the likelihood of a future encounter with the Nassau County police likely to result in a subsequent unconstitutional strip search").

[4] Defendants moved, in the alternative, for judgment on the pleadings pursuant to Rule 12(c).  Doc. 39.  Given that Defendants' briefs rely heavily on the evidentiary record presently before the Court, the Court denies Defendants' Rule 12 motion and considers the motion exclusively as one for summary judgment.

[5] Under Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1"), a party moving for summary judgment pursuant to Rule 56 must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local R. 56.1(a).  Each statement must be accompanied by a citation to admissible evidence.  Local R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record to support or controvert a purported material fact).  If the moving party seeks summary judgment against a *pro se* litigant, it is also required to notify the *pro se* litigant of the requirements of Rule 56 and Local Rule 56.1.  Local R. 56.2.

Defendants have complied with their obligations insofar as they submitted a Local Rule 56.1 Statement and provided Plaintiff with notice, pursuant to Local Rule 56.2, of the potential consequences of not responding to the motion.  Docs. 40, 43.  However, Defendants' Local Rule 56.1 Statement is deficient in that it fails to support each material fact statement with a citation to admissible evidence in the record.  Doc. 43.  (The only exceptions are paragraphs 2, 4, 5 and 12, which serve to identify certain of Defendants' exhibits.)  The Court therefore disregards the parties' Local Rule 56.1 Statements and instead relies on its independent review of the record.  *See, e.g.*, *Carbone v. Cnty. of Suffolk*, No. CV-10-3631 SJF AKT, 2013 WL 1386251, at *5 (E.D.N.Y. Apr. 2, 2013) (discussing district courts' "discretion to conduct an assiduous review of the record" (quoting *Monahan v. N.Y.C. Dept. of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000))).

[6] As the following summary makes clear, there are relatively few undisputed facts in this case.  The Court therefore provides the basic background details here and will take up additional, disputed points for fact in the discussion that follows.

Plaintiff was arrested by Clarkstown police officers during the evening of December 22, 2010. *See* Aff. of Sgt. Brian Gorsky in Supp. ("Gorsky Aff.") at 2. He was taken to Clarkstown Police Headquarters and detained in a holding cell by himself until his arraignment. *See id.* at 2-3.[7] During that time, he grew agitated and began punching the walls of the cell. *See id.* at 3-4. The parties offer alternative explanations as to the cause of Plaintiff's behavior: Plaintiff maintains that it was because the officers were ignoring his requests for medical attention, while Defendants claim that Plaintiff was accusing the officers of stealing some of his money during their post-arrest inventory of his property. Pl.'s Reply Aff. in Opp'n at 3; Gorsky Aff. at 3.[8]

Gorsky ordered Plaintiff to stop punching the walls, but Plaintiff failed to do so. *See* Gorsky Aff. at 4. Gorsky claims that he then warned Plaintiff that he would be pepper sprayed if his behavior continued. *Id.* At a certain point, Gorsky sprayed Plaintiff with oleoresin capsicum ("OC") gel. *See id.* at 5.[9] Gorsky acknowledges that he deployed the gel in multiple bursts. *See*

---

[7] Defendants have provided the Court with a copy of a video captured by the police security camera. The video is incorporated by reference as Exhibit D to the Declaration of Harold Y. MacCartney, Jr. in support of Defendants' motion for summary judgment. Doc. 42. While the video captures much of what transpired while Plaintiff was in the holding cell, it lacks audio and is therefore unable to paint a full picture of how the events unfolded. Of course, the video is also limited to actions that can be discerned from the particular camera angle available.

[8] Gorsky's chronology of events is as follows: (1) Plaintiff became "irate" when he was told that the officers had only recovered $100 as part of the inventory (Plaintiff claimed he had $180); (2) Gorsky attempted to calm him down, first by providing assurances as to the accuracy of the count and then by producing the money itself; (3) Plaintiff complained of being sick for the first time but would not describe his symptoms; and (4) Plaintiff began to punch the walls of the holding cell. Gorsky Aff. at 3-4.

[9] Oleoresin capsicum is the chemical agent commonly referred to as "pepper spray," though the word "spray" is technically a misnomer in this case. As Gorsky explains it:

> OC gel, unlike OC aerosol spray, requires direct contact with the target which induces a temporary burning sensation of the skin and swelling of the eyes. It is used by law enforcement in close quarters . . . because it does not produce a mist which could expose the police officers in proximity to the subject to airborne OC exposure as a result of inhalation.

Gorsky Aff. at 5.

*id.* He then temporarily left the area but, because Plaintiff continued to punch the walls, sprayed him with additional bursts of OC gel when he returned. *See id.* at 6.

Gorsky took no additional measures to control Plaintiff's behavior beyond that point. *See id.* at 7. Instead, Plaintiff was left alone and eventually calmed down, using water from the basin in the holding cell to remove the OC gel. *See id.* The officers returned the long-sleeve shirt that they had taken from him subsequent to the arrest and that, as a result, did not have any OC gel on it. *See id.* He was then taken to his arraignment. *See id.*

Following Plaintiff's arraignment, he was taken to the Rockland County Correctional Facility. *See id.* An intake evaluation was performed upon his arrival (at 12:00 a.m. on December 23, 2010). *See* Decl. of Harold Y. MacCartney, Jr. in Supp. Ex. E.[10] The records from that evaluation showed no serious medical condition and indicated that he could be treated as a "routine admission." *Id.*[11] A medical assessment was conducted approximately three hours later. *See id.*[12] The records from that examination showed that Plaintiff had a history of asthma, was experiencing shortness of breath, and had a mild headache. *Id.* A "Clinical Progress Record" from the same time period notes that he had been given two puffs from an Albuterol inhaler shortly after his arrival at the prison. *Id.*[13]

---

[10] The exhibit contains what Defendants view to be the relevant excerpts from Plaintiff's medical records. A full set of records is attached as Exhibit A to Defendants' Request for Admissions. Doc. 37. The Court has reviewed the full set of records and has not located any additional facts that are material to the disposition of the instant motion, nor has Plaintiff asked the Court to consider any facts derived from the additional pages of his medical records.

[11] The pages of Exhibit E are not Bates numbered. The page recording Plaintiff's intake status is the third from the front.

[12] The excerpted records from this examination begin on the fourth page of Exhibit E.

[13] This information is recorded on the twelfth page of Exhibit E.

4

## II.      Legal Standard on Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the burden of proof at trial would fall on the movant, that party's "own submissions in support of the motion must entitle it to judgment as a matter of law."  *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998).  Conversely, "[w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."  *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322-23).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp.*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)) (internal

quotation marks omitted). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)) (internal quotation mark omitted). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

The Second Circuit has made clear that "special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)). *Pro se* litigants' submissions are "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y.C. Dep't of Educ.*, No. 09 Civ. 6621, 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by *pro se* litigants). Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). "However, a pro se party's 'bald assertion,' completely unsupported

6

by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## III.   Discussion[14]

### A.  The Clarkstown Police Department Is Not a Proper Defendant

Defendants assert, and Plaintiff concedes, that the Clarkstown Police Department is not properly named as a Defendant in this case.  *See* Defs.' Mem. of Law in Supp. at 11-12; Pl.'s Reply Aff. in Opp'n at 1; *see also Polite v. Town of Clarkstown*, 60 F. Supp. 2d 214, 216 (S.D.N.Y. 1999) ("Under law of the State of New York, 'a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence.'  Therefore, municipal departments in this State—such as the Clarkstown Police Department—are not amenable to suit, and no claims can lie directly against them." (citation omitted) (quoting *Hoisington v. Cnty. of Sullivan*, 55 F.Supp.2d 212, 214 (S.D.N.Y. 1999))).  As such, all claims against the Clarkstown Police Department are dismissed with prejudice.[15]

---

[14] As a threshold matter, the Court rejects Defendants' claim that Plaintiff "has not come forward with anything more than bald assertions that his behavior was justified" and that "there is a complete absence of evidence to support the plaintiff's case."  Defs.' Reply Mem. of Law in Supp. at 11.  To the contrary, Plaintiff has come forward with an affidavit, signed under penalty of perjury, recounting his version of the events at issue.  To the extent that those descriptions reflect Plaintiff's firsthand knowledge, they constitute admissible evidence in support of his claims.

The Court notes for the record that Plaintiff's affidavit is undated, bringing it out of technical compliance with 28 U.S.C. § 1746, which sets out the requirements for unsworn declarations.  Given Plaintiff's *pro se*, incarcerated status, the Court will overlook the procedural technicality in this instance.  *See BMS Entm't/Heat Music LLC v. Bridges*, No. 04 CIV. 2584 (PKC), 2005 WL 2482493, at *2 n.1 (S.D.N.Y. Oct. 7, 2005) (accepting an undated affidavit under 28 U.S.C. § 1746); *Lakeview Outlets, Inc. v. Uram*, No. 95-CV-0136, 1996 WL 571520, at *2 (N.D.N.Y. Oct. 2, 1996) (accepting an undated affidavit even though it also failed to include an express "penalty of perjury clause").

[15] In addition to conceding this point, Plaintiff requests leave "to file an amended complaint which will more fully elaborate the details of the events on December 22, 2010."  Pl.'s Reply Aff. in Opp'n at 1.  Defendants do not

**B.  Plaintiff's Excessive Force Claim**

"While the Eighth Amendment's protection [against cruel and unusual punishment] does not apply 'until after conviction and sentence,' the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment."  *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (citations omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)).  The same legal standard applies regardless of the amendment under which the claim arises.  *Id.* at 48.  That standard "has two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect."  *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000).

The subjective component goes to the defendant's intent, asking "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  The factors to be examined include:

> the extent of the injury and the mental state of the defendant, as well as "the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response."

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)).

The objective component focuses on whether the alleged use of force was "sufficiently serious or harmful enough."  *Walsh*, 194 F.3d at 50.  This determination is "contextual and responsive to 'contemporary standards of decency.'"  *Hudson*, 503 U.S. at 8 (quoting *Estelle v.*

---

address this request in their reply brief.  However, because the case has progressed beyond the pleadings stage, there is no need for Plaintiff to incorporate additional factual allegations into his Amended Complaint at this time. Plaintiff's motion for leave to further amend his complaint is therefore denied as moot.  To the extent Plaintiff wishes to present additional facts in support of his claims, he is free to do so by presenting admissible, relevant evidence at trial.

*Gamble*, 429 U.S. 97, 103 (1976)).  "An excessive force claim may be established even where plaintiff does not suffer a serious or significant injury, provided that it is shown that the amount of force used is more than *de minimis* or the use of the force is 'repugnant to the conscience of mankind.'"  *Gashi v. Cnty. of Westchester*, No. 02CV 6934GBD, 2007 WL 749684, at *5 (S.D.N.Y. Mar. 12, 2007) (quoting *Walsh*, 194 F.3d at 47-48).  A defendant's "malicious use of force to cause harm" always violates contemporary standards of decency and therefore triggers a *per se* constitutional violation.  *See Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citing *Hudson*, 503 U.S. at 9).

Based on the evidence currently before the Court, the Court cannot conclude that Plaintiff's excessive force claim fails as a matter of law.  To the contrary, the evidence in the record reveals significant disputes of material fact regarding the circumstances surrounding Gorsky's use of OC gel.[16]  These disputes go to both the subjective and objective prongs of the excess force determination.

First, while there is no dispute about Plaintiff's behavior while in the holding cell, the parties present very different explanations as to what triggered that behavior.  Gorsky maintains that the post-arrest inventory of Plaintiff's property yielded $100 and that, because Plaintiff claimed he had $180 at the time of his arrest, Plaintiff was reacting to a perceived monetary theft.  Gorsky Aff. at 3.  Plaintiff, however, contends that the money count was never an issue.  *See* Pl.'s Reply Aff. in Opp'n at 2-3 ("The 'fact' is that Sgt. Gorsky showed Plaintiff the money,

---

[16] Defendants assert that Plaintiff "admits that the circumstances surrounding his arrest and pre-trial detention are summarized in the Clarkstown Police Department Case Summary which is attached as Exhibit 'C' to the MacCartney Declaration."  Defs.' Reply Mem. of Law in Supp. at 1.  The Court reads this "admission" (which is based on Plaintiff's response to Defendants' Local Rule 56.1 Statement) merely as an indication that Plaintiff does not challenge the authenticity of the police records.  To the extent Defendants intend to suggest that Plaintiff made any sort of admission as to the accuracy of the narratives contained in those records (which mirror the contents of the Gorsky affidavit in all material respects), the contents of Plaintiff's own affidavit clearly belie such a reading.

9

told him how much was there and Plaintiff said fine, then reiterated his request to be taken to the hospital . . . ."). Instead, according to Plaintiff, he was upset because the officers were ignoring his requests to be taken to the hospital to be treated for an asthma attack. *Id.* at 2-3, 8; *see also id.* at 4 (asserting that Gorsky and his colleagues "laughed at Plaintiff's need for medical attention which caused Plaintiff's highly agitated state").

To buttress his version of events, and in an effort to challenge the credibility of Gorsky's story, Plaintiff has produced an account statement from the Rockland County Correctional Center.[17] This document shows an initial deposit of $180 upon his arrival at the prison on December 23, 2010, the desired inference being that Gorsky is now misrepresenting the amount of cash recovered from Plaintiff upon his arrest in order to explain the events that followed. This documentary evidence, together with Plaintiff's testimony, creates a genuine dispute as to what instigated Plaintiff's agitated state in the holding cell.

In addition, the record reflects disagreement concerning the amount of OC gel that was used. Gorsky says that he initially deployed six or seven short bursts, followed by one or two more when he returned. Gorsky Aff. at 5-6. Plaintiff's testimony appears to challenge those

---

[17] Attached to Plaintiff's affidavit is a one-page print-out from the Rockland County Correctional Center, dated September 10, 2013. The document is entitled "Resident Account Summary" and shows Plaintiff's prison account balance and transaction history. Plaintiff refers to the document as "Exhibit A" and describes it as a "Memorandum . . . from the Rockland County Jail." Pl.'s Reply Aff. in Opp'n at 3. The document is not properly identified or authenticated; however, in light of Plaintiff's *pro se* status, because Defendants have not objected to the document's authenticity, and because the Court finds no independent basis on which to question the same, the Court will consider the exhibit for purposes of the instant motion. *See Lyons v. Scitex Corp.*, No. 95 CIV. 10594 (HB), 1998 WL 24371, at *2 n.3 (S.D.N.Y. Jan. 22, 1998) (rejecting unauthenticated exhibits attached to a memorandum of law but noting that "the Court would accept such exhibits from a pro se plaintiff unschooled in legal procedure"); *see also Anderson v. Goord*, No. 99CIV.0975(GBD)(HBP), 2001 WL 561227, at *6 (S.D.N.Y. May 24, 2001), *aff'd in part, vacated in part sub nom. Anderson v. Recore*, 317 F.3d 194 (2d Cir. 2003) ("Although the letter is not properly authenticated and is not referenced in the Amended Complaint, in light of plaintiff's *pro se* status and in the interest of eliminating possible further motion practice, I have considered the letter as if it were annexed to and incorporated in the Amended Complaint.").

counts, asserting the Gorsky sprayed him with enough OC gel to "soak" his shirt.  *See* Pl.'s Reply Aff. in Opp'n at 7, 9.[18]  Plaintiff also disputes Gorsky's claim that he warned Plaintiff before deploying the OC gel in the first place, *see id.* at 4, and he claims that Gorsky laughed at him afterwards.  *See id.* at 9.

The crux of Defendants' argument is that Gorsky's use of OC gel was justified by the fact that Plaintiff refused to comply with multiple orders to stop his disruptive behavior.  *See* Defs.' Mem. of Law in Supp. at 13, 15, 18.  However, the cases to which Defendants cite as supporting the use of pepper spray in such situations are readily distinguishable.  In *Adilovic v. County of Westchester*, No. 08 CIV. 10971 PGG, 2011 WL 2893101 (S.D.N.Y. July 14, 2011), the plaintiff was outside his cell and suffering from delirium when he ignored a correction officer's order.  *Id.* at *5.  In *Kopy v. Howard*, No. 9:07-CV-417 DNH/RFT, 2010 WL 3808677 (N.D.N.Y. Aug. 11, 2010), the plaintiff was again outside of his cell when he ignored the officer's orders, and there was no dispute that the plaintiff was warned before the pepper spray was used.  *Id.* at *3.  Moreover, the plaintiff in that case had failed to respond to the defendant's motion.  *Id.* at *1.  *Gashi v. County of Westchester*, No. 02CV 6934GBD, 2007 WL 749684 (S.D.N.Y. Mar. 12, 2007), did not involve the use of pepper spray at all.[19]  None of these cases stands for the

---

[18] In response, Defendants note that Plaintiff wiped his face with his shirt after washing his face and ask, "Why would he do that if the shirt was 'soaked' with OC as [Plaintiff] claims in his affidavit?"  Defs.' Reply Mem. of Law in Supp. at 5-6.  It is a good question, but one that calls for a credibility determination of the kind the Court cannot make in deciding a Rule 56 motion.

[19] Defendants also cite to four cases for the proposition that chemical agents can be used to control "unruly or disruptive inmates."  Defs.' Mem. of Law in Supp. at 18.  The only one from the Second Circuit, *Horne v. Coughlin*, 155 F.3d 26 (2d Cir. 1998), involved neither chemical agents nor an excessive force claim.  The other three cases, which are nonbinding on this Court in any event, are distinguishable.  *Scroggins v. Davis*, 346 F. App'x 504 (11th Cir. 2009) (per curiam) involved "a high-risk, dangerous inmate, with a history of a prior escape" who was outside his cell and "got involved in a scuffle with the guards."  *Id.* at 505.  In *Combs v. Wilkinson*, 315 F.3d 548 (6th Cir. 2002), chemical agents were used as part of an effort to regain control of a death row unit after it was taken over by a group of inmates.  *Id.* at 551.  *Soto v. Dickey*, 744 F.2d 1260 (7th Cir. 1984), was a class action regarding the use

proposition that the use of OC gel is always permitted simply because a detainee, confined to his cell, is noncompliant.  Given the factual disputes in the record, the Court is not in a position to assess whether Gorsky's use of force was proportional or excessive under this particular set of circumstances.  Indeed, absent further findings of fact, the Court cannot even properly characterize what those circumstances were.[20]

---

of chemical agents to maintain discipline at a maximum security prison.  The court in that case specifically noted that "the appropriateness of the use must be determined by the facts and circumstances of the case."  *Id.* at 1270.

[20] Defendants rely heavily on the security video, which they seem to believe conclusively resolves any discrepancies between the parties' dueling accounts of what transpired.  It does not.  In *Scott v. Harris*, 550 U.S. 372 (2007), the existence of a videotape was determinative because it "quite clearly contradict[ed] the version of the story told by respondent."  *Id.* at 378.  As a result, the Supreme Court went on to hold that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id.* at 380.

Defendants posit that *Harris* stands for the proposition that, "[w]here the parties tell conflicting versions of an incident and one version is supported by a videotape, the court must credit that version of events."  Defs.' Mem. of Law in Supp. at 19.  That interpretation misses the mark:  it was not just that the video "supported" on side, but also that it "blatantly contradicted" the other, that compelled the Court's decision in *Harris*.  Since most of the key factual disputes in this case concern what the parties said, and since the video lacks audio, the video neither confirms nor belies either side's story.  *Cf. Carolina v. Pafumi*, No. 3:12-CV-163 VLB, 2013 WL 1673108, at *1 n.2, *3 (D. Conn. Apr. 17, 2013) (noting that a videotape confirmed a version of events that was otherwise deemed admitted because plaintiff had not responded to the motion); *Alston v. Butkiewicus*, No. 3:09-CV-207 CSH, 2012 WL 6093887, at *14 (D. Conn. Dec. 7, 2012) ("The repeated orders from correctional staff and the requests from medical and mental health staff are documented on the video evidence."); *Flemming v. Kemp*, No. 09-CV-1185 TJM/DRH, 2012 WL 4094196, at *11 (N.D.N.Y. Aug. 30, 2012) (describing various orders and statements that were captured by a video that "fully supported" defendants' story).  Similarly, certain details, such as the number of bursts of OC gel that were deployed, are not captured clearly enough to definitively corroborate either party's rendition of the facts.

While the Court can rely on the video to the extent that its contents speak for themselves, it not permitted, at the summary judgment stage, to draw any of the recommended inferences in Defendants' favor.  For instance, Defendants point out (1) that the video shows Gorsky speaking to Plaintiff prior to deploying the OC gel and (2) that Gorsky says that this was the point at which he warned Plaintiff that he would be sprayed unless he calmed down.  *See* Defs.' Mem. of Law in Supp. at 14.  While Gorsky's account is certainly *consistent* with the video evidence, the implication seems to be that the video therefore *confirms* Gorsky's account.  The Court is precluded from making that inferential leap.

Plaintiff's version of events clearly precludes summary judgment on the subjective prong. According to Plaintiff's account, Gorsky and his colleagues incited Plaintiff's agitation by ignoring—and laughing at—his repeated requests for medical attention, and then Gorsky responded to Plaintiff's agitated state by soaking him with OC gel, without warning and while he was confined to the holding cell, and then laughing at him again. Viewing the evidence in this light, as the Court is required to do, it is evident that reasonable jurors could deem Gorsky's conduct malicious. In short, the outcome of the various subjective prong factors will depend on evidentiary and credibility determinations that can only be made at trial.

With respect to the objective prong, Plaintiff concedes that the harm inflicted by the OC gel was of limited duration. *See* Decl. of Harold Y. MacCartney, Jr. in Supp. Ex. B, at 114:8-114:14; Pl.'s Reply Aff. in Opp'n at 8 (expressing uncertainty over the precise duration of the OC gel's effects). But that alone does defeat Plaintiff's claim; if it did, police and corrections officers would essentially be able to utilize pepper spray and similar chemical agents with impunity. As noted above, the objective prong is context-driven, and even *de minimis* force can be deemed excessive if its use is "repugnant to the conscience of mankind." The same disputed facts that precluded summary judgment on the subjective prong therefore create a genuine issue for trial with respect to the objective prong. And, as discussed in more detail below, there is also a factual dispute as to whether Plaintiff was suffering from an asthma attack. If he was, then a reasonable trier of fact could find that the use of OC gel in that context was sufficiently repugnant to render it excessive.

Ultimately, Defendants' arguments ask the Court to make a credibility determination in their favor and against Plaintiff. This is precisely the type of fact-finding that the Court is precluded from undertaking at the summary judgment phase. Whether Plaintiff will be able to

successfully *prove* his case beyond a preponderance of the evidence is a question for another day. For purposes of the instant motion, however, the state of the record is such that Plaintiff can take his case to trial.

### C. Plaintiff's Deliberate Indifference Claim

As with excessive force claims, claims brought by state pretrial detainees alleging deliberate indifference to serious medical needs arise under the Fourteenth Amendment, but the standard is the same as if they were brought under the Eighth Amendment. *See Caiozzo v. Koreman*, 581 F.3d 63, 69-72 (2d Cir. 2009). Once again, the analysis contains both objective and subjective prongs. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

To satisfy the objective prong, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). To be "sufficiently serious," there must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway*, 37 F.3d at 66 (quoting *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)).

To satisfy the subjective prong, the plaintiff must demonstrate that "the charged official . . . act[ed] with a sufficiently culpable state of mind." *Id.* The requisite state of mind is the equivalent of criminal recklessness, wherein "the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).

14

There are two possible bases for Plaintiff's deliberate indifference claim: (1) the effects of the OC gel itself and (2) Plaintiff's claim that he was suffering from an asthma attack.[21]  The first fails as a matter of law.  Plaintiff concedes that OC gel does not produce lasting deleterious effects, *see* Pl.'s Reply Aff. in Opp'n at 8, and courts within this Circuit have previously found that the temporary discomfort caused by pepper spray or mace does not constitute a "sufficiently serious" injury.  *See Strassner v. O'Flynn*, No. 04-CV-6021CJS, 2006 WL 839411, at *8 (W.D.N.Y. Mar. 27, 2006); *Universal Calvary Church v. City of New York*, No. 96CIV.4606(RPP), 2000 WL 1538019, at *38 (S.D.N.Y. Oct. 17, 2000) ("[Plaintiff] has not identified evidence suggesting that he was visibly injured or that he had any immediate injuries other than that his eyes were burning from the mace.").  Moreover, there is no dispute that there was a basin in the cell with Plaintiff the entire time, such that he could rinse his face with water if necessary to remove the OC gel.  The Court thus finds the record devoid of evidence that Gorsky was deliberately indifferent to any temporary discomfort the OC gel may have caused.

The asthma allegation is a different story.  While merely "[b]eing an asthmatic (a person susceptible to asthma attacks) is not a condition, in Eighth Amendment parlance, that is severe or 'sufficiently serious,'" courts distinguish the mere "existence of the condition . . . from the situation in which an inmate is suffering an actual attack."  *Patterson v. Lilley*, No. 02 CIV.6056 NRB, 2003 WL 21507345, at *4 (S.D.N.Y. June 30, 2003).  Here, Plaintiff's claim is based on the latter:  he specifically maintains that he told Gorsky that he needed to go to the hospital because he was suffering an attack.  *See* Pl.'s Reply Aff. in Opp'n at 4 ("Contrary to Sgt.

---

[21] Defendants point out that Plaintiff did not specifically allege an asthma attack in his Amended Complaint.  *See* Defs.' Mem. of Law in Supp. at 22.  However, the Amended Complaint includes multiple allegations in which Plaintiff claims he asked to be taken to the hospital prior to being pepper sprayed.  Doc. 12.  Given the "special solicitude" afforded to *pro se* litigants, the Court will not fault Plaintiff for failing to specify the particular medical condition that precipitated those requests.

Gorsky's assertion that Plaintiff refused to tell him why he needed to go to the hospital, Plaintiff in fact told Sgt. Gorsky that he was asthmatic *and was having an attack*." (emphasis added)). Thus, to the extent that there are genuine issues of material fact as to whether Plaintiff actually was experiencing an asthma attack while in pretrial detention, those issues preclude summary judgment on the objective prong.

Factual disputes on this point are prevalent in the record. Gorsky, of course, disputes Plaintiff's assertion that he told him about the alleged attack. *See* Gorsky Aff. at 4 (indicating that Plaintiff "would not describe his symptoms or his ailment"). Moreover, relying on his past experience as a certified emergency medical technician ("EMT"), Gorsky states that, "based upon [his] observations, [Plaintiff] was not suffering from an asthma attack at the time the OC gel was deployed and the exposure to OC gel did not precipitate any asthma attack." Gorsky Aff. at 2, 5-6. That Gorsky had medical training, however, does not entitle the Court to make credibility determinations in his favor. While Plaintiff's affidavit does not provide details regarding his alleged symptoms, the Court, mindful of Plaintiff's *pro se* status, will not draw negative inferences against him on that basis alone. In other words, while Plaintiff can be cross-examined regarding the symptoms he was experiencing, the Court cannot make a determination on this record that Plaintiff was *not* having an asthma attack or find that the alleged asthma attack was insufficiently serious as a matter of law. *See Bost v. Bockelmann*, No. 9:04-CV-0246 GLSDEP, 2007 WL 527320, at *9 (N.D.N.Y. Feb. 20, 2007) (adopting the magistrate's recommendation that, "[a]lthough [*pro se*] plaintiff does not describe the extent of his asthma or its attendant symptoms, when plaintiff is given the benefit of every inference such a condition could potentially be viewed as a serious medical condition").

Defendants point to the security video and to the prison medical records in an effort to corroborate Gorsky's account.  *See* Defs.' Mem. of Law in Supp. at 23; Defs.' Reply Mem. of Law in Supp. at 4, 9-10.  Defendants assert that the "video shows no evidence that the plaintiff was wheezing, coughing or gasping for air."  Defs.' Reply Mem. of Law in Supp. at 4.  First, given the absence of audio and the fact that the footage was shot from the ceiling outside the cell, the Court is unable to make a conclusive factual determination on this point.  More importantly, however, the Court is not in a position to conclude that the absence of any such symptoms would definitely establish that Plaintiff was not experiencing an attack.  That type of medical assessment is not one the Court is competent to make as a matter of law.[22]

The medical records are equally unavailing.  Although the initial medical intake form characterized Plaintiff as a "routine admission," he was given two puffs from an inhaler shortly thereafter and his medical evaluation three hours later reported shortness of breath.  Determining what inferences, if any, to draw regarding Plaintiff's condition in the holding cell on the basis of these records is thus an evidentiary matter necessitating a finding of fact.  That is particularly so where, as here, the records on their face seem to support alternative inferences.  In other words, the medical records in this case do not, as a matter of law, *preclude* an inference that Plaintiff

---

[22] Defendants argue that "[t]here is absolutely no evidence in this record which would support a claim that [Plaintiff] was suffering an asthma attack."  Defs.' Reply Mem. of Law in Supp. at 10.  However, Plaintiff has provided competent contrary testimony, in the form of his affidavit, on this point.

experienced an asthma attack earlier in the evening.[23]  Defendants are therefore not entitled to summary judgment on the objective prong.[24]

The Court similarly finds that material questions of fact exist with regard to Gorsky's culpability.  As discussed, Plaintiff maintains that he told Gorsky he was experiencing an asthma attack.  He further claims that the OC gel exacerbated that attack.  Pl.'s Reply Aff. in Opp'n at 3-4.  Gorsky disputes these contentions.  Thus, as with Plaintiff's excessive force claim, the outcome of the subjective prong turns on whose version of events is to be believed.  If, armed with the knowledge that Plaintiff was suffering an asthma attack, Gorsky really did respond by laughing at him, inciting him to act out, and then spraying him with OC gel, a reasonable finder of fact may conclude that Gorsky's culpability rose to the level of recklessness needed to establish deliberate indifference.  This is particularly so in light of Gorsky's medical training, as he presumably would have been able to draw the requisite inferences regarding the risks such conduct would pose to Plaintiff's safety.  Since resolution of these disputed issues requires fact-finding, dismissal at the summary judgment phase would be improper.

Plaintiff has not proven his case by any means.  At this stage, however, all he needed to do was come forward with competent evidence demonstrating the existence of a material

---

[23] While Defendants attempt to explain away Plaintiff's shortness of breath by attributing it to his behavior in the cell, *see* Defs.' Reply Mem. of Law in Supp. at 9, that argument is purely factual and cannot be considered by the Court in ruling on Defendants' motion.

[24] At one point in their reply brief, Defendants seem to suggest that Plaintiff might not suffer from asthma at all, despite the fact that Plaintiff's medical records clearly reflect a history of asthma (and at least one actual asthma attack while incarcerated).  *See* Defs.' Reply Mem. of Law in Supp. at 6 (referencing Plaintiff's "alleged asthmatic condition"); Decl. of Harold Y. MacCartney, Jr. in Supp. Ex. E.  Defendants base their attack on the fact that Plaintiff's affidavit quotes *Proof of Facts* with respect to proper asthma treatment, arguing that "it appears that [Plaintiff] had to research [the] illness" in order to respond to the instant motion. Defs.' Reply Mem. of Law in Supp. at 6.  The Court finds it both inexplicable and unseemly that Defendants would attempt to discredit a *pro se* plaintiff merely because he sought to substantiate his arguments (which Defendants elsewhere attempt to write off as "bald assertions") by citing a reference source.

question of fact for trial.  That burden having been satisfied with respect to Plaintiff's allegation that Gorsky was deliberately indifferent to his claim that he was suffering from an asthma attack, summary judgment must be denied.

### D.  Qualified Immunity[25]

Gorsky argues that, even if Plaintiff's rights were violated, he is nevertheless entitled to qualified immunity.  *See* Defs.' Mem. of Law in Supp. at 23-25.  Defendants bear the burden of proof on this affirmative defense.  *See Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  As the Second Circuit has described the doctrine:

> A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was "objective[ly] legal[ly] reasonable[] . . . in light of the legal rules that were clearly established at the time it was taken."

---

[25] Qualified immunity is only available as a defense to municipal employees when they are sued in their individual capacities.  *See Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993).  The Amended Complaint does not indicate whether Plaintiff is suing Gorsky in his individual or official capacity.  The Court therefore assumes that Plaintiff is attempting to bring both individual- and official-capacity claims.  *See Ippolito v. Meisel*, 958 F. Supp. 155, 160 (S.D.N.Y. 1997) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993)).  However, a suit against a municipal officer in his official capacity under Section 1983 requires proof that a municipal policy or custom caused the constitutional injury.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  Since Plaintiff has not alleged, and none of the evidence in the record suggests, that Gorsky's purported misconduct was caused by Clarkstown policy or custom, the Court dismisses any official-capacity claim.

*Munafo v. Metropolitan Transportation Authority*, 285 F.3d 201, 210 (2d Cir. 2002) (alterations in original) (citations omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

The Supreme Court recently explained that, "[t]o be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, --- U.S. ---, 132 S. Ct. 2088, 2093 (2012) (second alteration in original) (quoting *Anderson*, 483 U.S. at 640). Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Fabrikant v. French*, 691 F.3d 193, 213 (2d Cir. 2012) (internal quotation mark omitted) (quoting *Ashcroft v. al-Kidd*, --- U.S. ---, 131 S. Ct. 2074, 2083 (2011)). Moreover, "[e]ven if the right at issue was clearly established in certain respects . . ., an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("[Q]ualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001))). "Qualified immunity thus affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions and 'protects all but the plainly incompetent or those who knowingly violate the law' from liability for damages." *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (citations omitted) (quoting *Messerschmidt v. Millender*, --- U.S. ---, 132 S. Ct. 1235, 1244, 1249 (2012)). Therefore, "[w]hether qualified immunity applies in a particular case 'generally turns on the objective legal reasonableness' of the challenged action, 'assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* (quoting *Messerschmidt*, 132 S. Ct. at 1245).

When considering qualified immunity in the context of a Rule 56 motion, the Second Circuit has long held as follows:

> Summary judgment dismissing a claim on the basis of the defendants' qualified-immunity defense may thus be granted if the court finds that the asserted rights were not clearly established, or if the evidence is such that, even when it is viewed in the light most favorable to the plaintiffs and with all permissible inferences drawn in their favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right.

*In re State Police Litig.*, 88 F.3d 111, 123 (2d Cir. 1996); *see also Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (summary judgment on a qualified immunity defense is appropriate "if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances").

Given the factual disputes highlighted in the previous sections of this Opinion, summary judgment on the question of qualified immunity is inappropriate in this case. The rights of pretrial detainees to be free from excessive force and deliberate indifference to their serious medical needs are well established. The qualified immunity determination thus turns on the objective reasonableness of Gorsky's conduct.

Defendants argue that "it was objectively reasonable for Sgt. Gorsky in the undisputed factual circumstances faced by him to have concluded that the force he used was warranted and appropriate and that no serious medical need was ignored." Defs.' Mem. of Law in Supp. at 24-25. However, as discussed, the material facts in this case are hotly disputed. Without a clear picture of the events that transpired on the evening of December 22, 2010, the Court is unable to conclude that Gorsky's actions were objectively reasonable as a matter of law. *See Evering v. Rielly*, No. 98 CIV. 6718, 2001 WL 1150318, at *11 (S.D.N.Y. Sept. 28, 2001) (denying summary judgment on the basis that determining "[w]hether the conduct of the officers was

reasonable in light of Eighth Amendment jurisprudence depends upon whose story the jury credits").

## IV.    Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.  The Clarkstown Police Department is hereby dismissed from the case with prejudice.  The excessive force and deliberate indifference claims alleged against Sgt. Brian Gorsky in his individual capacity survive, though the deliberate indifference claim is limited to Plaintiff's alleged asthma attack.

The Clerk of the Court is respectfully directed (1) to terminate the Clarkstown Police Department as a defendant in this case, and (2) to terminate the pending motion (Doc. 39).

The remaining parties shall appear for a pretrial conference on **April 22, 2014 at 11:00 a.m.,** at which time the Court will set a trial date, a final pretrial conference date, and a schedule for all pretrial filings.  Defendants' counsel shall appear in person for the conference, and Plaintiff shall appear telephonically.

It is SO ORDERED.

Dated:     March 31, 2014
           New York, New York

_____
Edgardo Ramos, U.S.D.J.