UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAYMOND LEWIS,

                Plaintiff,

– against –

CLARKSTOWN POLICE DEPARTMENT and
SGT. BRIAN GORSKY,

                Defendants.

**OPINION AND ORDER**

11 Civ. 2487 (ER)

Ramos, D.J.:

    Plaintiff Raymond Lewis ("Plaintiff" or "Lewis") moves, pursuant to Federal Rule of Civil Procedure 54(b) and Rule 6.3 of the Local Civil Rules for this District to provide for partial reconsideration of this Court's March 31, 2014 Opinion and Order ("March 31 Order"), Doc. 52. *See* Pl.'s Mem. L. Supp. Mot. Partial Reconsideration, Doc. 106 ("Pl. Mot. Reconsideration"). Plaintiff does not seek reconsideration of the ultimate result of the March 31 Order, rather, he seeks to correct the legal standards applied to his excessive force and failure to provide medical care claims. *Id.* at 1. For the reasons stated below, Plaintiff's motion for partial reconsideration is GRANTED. Upon reconsideration, the Court grants Plaintiff's request to apply a different standard and adheres to its prior decision in this case.

**I. Background**

    Familiarity with the March 31 Order is assumed. There, the Court granted in part and denied in part Defendants' motion for summary judgment. Doc. 52 at 2. In particular, the Court dismissed the Clarkstown Police Department from the case and upheld Plaintiff's claims against Sergeant Brian Gorsky ("Defendant" or "Gorsky"), while limiting the lack of medical care claim

to Plaintiff's alleged asthma attack.  At the time the Court rendered its opinion, Plaintiff was incarcerated and appearing *pro se*.  *Id.* at 1.  Pro bono counsel entered a notice of appearance on the Plaintiff's behalf on June 30, 2014.  Doc. 58.  On October 8, 2014, Plaintiff filed the instant motion in anticipation of trial.  Doc. 106.

In seeking reconsideration, Plaintiff argues that in the March 31 Order, the Court mistakenly applied the Fourteenth Amendment, which is applicable to *pretrial detainees*.  Doc. 106 at 5.  Plaintiff posits that the Court should have applied the Fourth Amendment, which is applicable to *pre-arraignment arrestees*.  *Id.* at 6.

## II.   Discussion

### A.  Legal Standard on Motion for Reconsideration

Under Rule 54(b), a court may revise "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54.  However, the underlying decision "may not usually be changed unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'"  *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).  This is because the original order or decision is considered to be the "law of the case," which "will be disregarded only when the court has 'a clear conviction of error' with respect to a point of law on which its previous decision was predicated[.]"  *Cohen v. UBS Fin. Servs., Inc.*, No. 12 Civ. 02147 (LGS), 2014 WL 240324, at *2 (S.D.N.Y. Jan. 22, 2014) (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981)).  Nonetheless, a court retains "discretion to revisit earlier rulings in the same

case, subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Official Comm. of Unsecured Creditors of Color Tile, Inc.*, 322 F.3d at 167 (quoting *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964)).

Rule 6.3 of the Local Civil Rules for this District provides for reconsideration or reargument of a court's order on a motion only where the court has overlooked controlling decisions or factual matters that were "put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court."[1] *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) (quoting *Greenwald v. Orb Commc'ns & Mktg., Inc.*, No. 00 Civ. 1939 (LTS) (HBP), 2003 WL 660844, at *1 (S.D.N.Y. Feb. 27, 2003)); see also Local R. 6.3. "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). Local Rule 6.3 is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Mikol*, 554 F. Supp. 2d at 500 (quoting *Dellefave v. Access Temps., Inc.*, No. 99 Civ. 6098 (RWS), 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001)) (internal quotation marks omitted). "Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for

---

[1] Local Civil Rule 6.3 requires that a notice of motion for reconsideration be served within fourteen days after the entry of a court's determination of the original motion. Although Plaintiff missed this deadline by several months, the Court granted him leave to file a motion for reconsideration given his earlier *pro se* status and the recent appointment of pro bono counsel. Status Hrg. Tr. 34-35, Sept. 24, 2014.

reconsideration must be denied." *Id.* (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

Whether to grant or deny a motion for reconsideration is within the sound discretion of the district court. *Premium Sports Inc. v. Connell*, No. 10 Civ. 3752 (KBP), 2012 WL 2878085, at *1 (S.D.N.Y. June 11, 2012) (citing *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

### B. Excessive Force Claim

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action; and (2) the action deprived plaintiff of a right secured by the Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)). Thus, a civil rights action brought under § 1983 will stand only insofar as a plaintiff can prove an actual violation of his rights under the Constitution or federal law. *Id.*

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). "In most instances," the right infringed will fall under "either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct." *Id.* Nonetheless, "the right of pretrial detainees to be free from excessive force amounting to punishment is

protected by the Due Process Clause of the Fourteenth Amendment." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (citations omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)).

The same legal standard applies to both Eighth and Fourteenth Amendment excessive force claims, regardless of the amendment under which they arise. *Id.* at 48. That standard "has two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). The subjective component goes to the defendant's intent, asking "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Alternatively, the objective component focuses on whether the alleged use of force was "sufficiently serious or harmful enough." *Walsh*, 194 F.3d at 50. This determination is "contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "An excessive force claim may be established even where plaintiff does not suffer a serious or significant injury, provided that it is shown that the amount of force used is more than *de minimis* or the use of the force is 'repugnant to the conscience of mankind.'" *Gashi v. Cnty. of Westchester*, No. 02 Civ. 6934 (GBD), 2007 WL 749684, at *5 (S.D.N.Y. Mar. 12, 2007) (quoting *Walsh*, 194 F.3d at 47-48). A defendant's "malicious use of force to cause harm" always violates contemporary standards of decency and therefore triggers a *per se* constitutional violation. *See Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citing *Hudson*, 503 U.S. at 9).

In *Graham*, the Supreme Court determined that excessive force claims that arise "in the context of an arrest or investigatory stop of a free citizen" are "most properly characterized as

5

. . . invoking the protections of the Fourth Amendment." 490 U.S. at 394.  The Court declined to decide "whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins." *Id.* at 395 n.10.  Nonetheless, the Second Circuit has indicated that "the Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer." *Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989).  Under the Fourth Amendment, the Court must engage in an exclusively objective analysis of the reasonableness of the Defendant's actions, merely assessing "whether the officers acted reasonably in light of the facts and circumstances of the situation they faced, without regard to their underlying motives or subjective intent toward the suspect." *Anderson v. Branen*, 17 F.3d 552, 559 (2d Cir. 1994) (citing *Graham*, 490 U.S. at 397).  The court is barred from considering subjective factors.  *See id*.

In light of the Second Circuit's guidance in *Powell*, Plaintiff's motion for reconsideration is granted and the Fourth Amendment standard is applied.  However, the change in analysis does not alter this Court's decision to deny summary judgment as to Plaintiff's excessive force claims.

In the Court's recitation of undisputed facts, the March 31 Order observed that, after Plaintiff's arrest, he was taken to Clarkstown Police Headquarters where he was detained in a holding cell until his arraignment.  Doc. 52 at 3.  It was during this period—between Plaintiff's arrest and arraignment—that the alleged § 1983 violations took place.  *Id.*  Therefore, Plaintiff's claims arose precisely during the timeframe contemplated by the Second Circuit in *Powell*.  Accordingly, as another court in this circuit concluded, "after *Powell* it seems that if confronted squarely with the issue, the Second Circuit would hold that when a plaintiff alleges that

6

excessive force was used against him before he was arraigned or formally charged, the Fourth Amendment governs such a claim." *Blake v. Base*, No. 90 Civ. 0008, 1998 WL 642621, at *11 (N.D.N.Y. Sept. 14, 1998).

Defendant fails to proffer any authority to bolster his argument that the Fourteenth Amendment, and not the Fourth Amendment, should govern Plaintiff's excessive force claims. In fact, the case law in support of Defendant's position is sparse.[2] On the contrary, courts in this circuit have routinely applied the Fourth Amendment to excessive force claims that arise subsequent to arrest, but before arraignment. For example, in *Usavage*, the plaintiff asserted excessive force claims involving the conduct of several officers both immediately after his arrest and while he was in a holding cell at the police command. *Usavage v. Port Auth. of New York & New Jersey*, 932 F. Supp. 2d 575, 585 (S.D.N.Y. 2013). The plaintiff's excessive force claims were analyzed under the Fourth Amendment's reasonableness standard. *Id*. at 591-592. Similarly, in *Thompson*, the district court applied the Fourth Amendment to excessive force claims brought by a plaintiff who asserted that, after his arrest, officers attacked him while transferring and forcibly placing him in a cell block. *Thompson v. City of Meriden*, No. 3:94 Civ. 1950 (EBB), 1999 WL 301693, at *1-2 (D. Conn. Apr. 14, 1999). The court noted that, at the time of the confrontation, "the plaintiff had neither been arraigned nor formally charged" and "[t]herefore, his pretrial custody status had not been determined by a judicial officer and no bail conditions had been set." *Id.* at *6; *see also Castellar v. Caporale*, No. 04 Civ. 3402, 2010 WL

---

[2] The Court was able to identify a single case in which a district court clearly applied the Due Process clause to excessive force claims that arose while the plaintiff was placed in a holding cell area prior to his arraignment. *See Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 292 (S.D.N.Y. 2001) (handcuffing in holding cell during the plaintiff's pre-arraignment detention analyzed under the Due Process clause). However, a more recent decision involving a similar scenario assessed the plaintiff's excessive force claims under the Fourth Amendment. *See Murray v. Williams*, No. 05 Civ. 9438 (NRB), 2007 WL 430419, at *6 (S.D.N.Y. Feb. 8, 2007) (applying the Fourth Amendment to claims involving force used in the plaintiff's holding cell during the processing of his arrest).

3522814, at *6 (E.D.N.Y. Sept. 2, 2010) ("[G]iven that plaintiff had not yet been arraigned or formally charged during Svinos' [Defendant's] alleged conduct . . . plaintiff's excessive force claim should be analyzed under the Fourth Amendment.").

Defendant argues that the Fourth Amendment is inapplicable to the present case because Plaintiff was no longer in the custody of his arresting officer when Defendant sprayed oleoresin capsicum ("OC") gel into Plaintiff's cell.  Def.'s Mem. L. Opp. Mot. Partial Reconsideration, Doc. 111. at 6.  The Second Circuit in *Powell* contemplated the application of the Fourth Amendment "prior to the time when the person arrested is arraigned . . . *and remains in the custody (sole or joint) of the arresting officer*." 891 F.2d at 1044 (emphasis added).  Indeed, it does appear that the majority, if not all, of the cases involving the application of the Fourth Amendment to excessive force claims arising from pre-arraignment detention occurred at least within the presence of the arresting officer.  *See e.g. Thompson*, 1999 WL 301693, at *6 (determining that "all of the elements required by *Powell* for application of the Fourth Amendment to an excessive force claim have been satisfied," noting "the plaintiff remained in the joint custody of . . . his arresting officer").  Defendant does not contest that Plaintiff's arresting officer was present, rather he states in a conclusory manner that "Fourth Amendment protections ended for Mr. Lewis when responsibility for his custody was transferred to Sgt. Gorsky and he was confined to a holding cell." Doc. 111 at 9.  However, in considering a motion for summary judgment, "the Court is 'required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *Pearson Educ., Inc. v. Ishayev*, No. 11 Civ. 5052 (PAE), 2014 WL 1225609 (S.D.N.Y. Mar. 24, 2014) (quoting *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012)).  Plaintiff contends that "Lewis continued to be in the custody of the arresting officer even if he was also in the custody

8

of others, including Defendant, at the same time." Pl. Reply Supp. Mot. Partial Reconsideration, Doc. 120 at 3.  Officer Robinson's arrest report states that he, along with his fellow responding officers, arrested Plaintiff.  McCartney Decl. Supp. Def.'s Mot. Summ. J., Doc. 69, Ex. C.  It further indicates that Officer Robinson took Plaintiff to the Clarkstown Police Department, where he met with Defendant to secure Plaintiff into his cell.  *Id*.  Defendant's own report notes that Plaintiff became "upset" and then later "belligerent" because Officer Robinson was only able to locate $100 in his wallet.  *Id.*  Officer Robinson observed that Plaintiff refused to sign his property envelope "due to his irate and uncooperative state."  *Id.*  In his Amended Complaint, Plaintiff asserts that Officer Robinson, his arresting officer, witnessed Defendant spray the OC gel into his cell.  Am. Compl., Doc. 12 at 5.  The Clarkstown Police Department's own jail procedures also suggest that Officer Robinson would have remained present during the pre-arraignment process, stating that "upon being placed in a cell, an incident report, jail log and property envelope shall be completed by the *arresting officer*."  Trazakoma Decl., Doc. 119, Ex. 1 at ¶ B(1). The security camera footage further shows the same officer who placed Plaintiff in the holding cell walking by several times, both before and after Defendant deployed the OC gel. Doc. 69 at Ex. D.  Given Officer Robinson's close proximity to and ability to exert control over Plaintiff, the Court concludes that Plaintiff remained in the joint custody of his arresting officer. Therefore, the Fourth Amendment applies to his excessive force claim.[3]

---

[3] The Court further notes that, in *Powell*, the Second Circuit specifically stated that, most likely, the Fourth Amendment is "*at least*" applicable to the period of time the arrestee remains in the arresting officer's custody, reasonably allowing for a broader application of the Amendment. 891 F.2d at 1044 (emphasis added).  Moreover, in a more recent case, the Second Circuit simply described its decision in *Powell* as "recognizing that Fourth Amendment applies until arrested person appears for arraignment *or* leaves custody of arresting officers."  *United States v. Cossette*, No. 13 Cr. 3691, 2014 WL 6610002, at *1 (2d Cir. Nov. 24, 2014) (emphasis added).

In its March 31 Order, the Court determined that it "cannot conclude that Plaintiff's excessive force claim fails as a matter of law" due to disputes of material fact that "go to *both* the subjective *and objective prongs* of the excess force determination." Doc. 52 at 9 (emphasis added). The main points of discord include disputes as to what triggered Plaintiff's disruptive behavior in his holding cell, the amount of OC gel that was used by the Defendant, and whether Plaintiff was suffering an asthma attack at the time. *Id.* at 9-14. Based on Plaintiff's account of what transpired, a "reasonable trier of fact could find that the use of OC gel in that context was sufficiently repugnant to render it excessive." *Id.* at 13 (specifically referencing Plaintiff's purported asthma attack). Since this Court previously determined that summary judgment was inappropriate based on an objective analysis of Plaintiff's excessive force claims, the March 31 Order's ultimate result remains intact.

### C. Failure to Provide Medical Assistance Claim

Plaintiff asks the Court to similarly apply the Fourth Amendment to his claim that he was denied medical assistance, noting that his status as an arrestee had not changed at the time this claim arose. Doc. 106 at 8-10. Plaintiff concedes that courts in this district frequently apply the Due Process clause's deliberate indifference standard to arrestees, as this Court did in its March 31 Order. *See e.g. Paulin v. Figlia*, 916 F. Supp. 2d 524, 534 (S.D.N.Y. 2013) (applying the deliberate indifference standard to denial of medical care claims from the time Plaintiff was in the squad car through his time in the holding cell); *Ricks v. O'Hanlon*, No. 07 Civ. 9849 (WHP), 2010 WL 245550, at *7-8 (S.D.N.Y. Jan. 19, 2010) (applying the deliberate indifference standard to the plaintiff's claims that he did not receive medical attention for at least two hours following the infliction of injuries associated with his arrest). Nonetheless, he is correct that the Second Circuit has never directly addressed the issue of whether to extend its reasoning in

*Powell* from excessive force to medical care claims. *See id*. at 9. Meanwhile, other circuits are split on the issue.[4] The courts that have applied the Fourteenth Amendment noticeably did not grapple with the question of which standard to apply. In contrast, those that have squarely confronted the issue have determined that the Fourth Amendment provides the proper framework and the Court finds their reasoning persuasive. Therefore, the Court grants Plaintiff's motion for reconsideration on this issue and applies the Fourth Amendment to his denial of medical treatment claim.

Courts outside the Southern District, but within the circuit, have cited *Powell* in reasonably concluding that:

> There is no reason, given the Court's [Second Circuit] current functional approach to these matters, to hold that a plaintiff was an arrestee governed by the Fourth Amendment for certain types of claims such as excessive force and not an arrestee for other claims such as denial of needed medical treatment immediately after the events concerning the excessive force claim occurred.

---

[4] The Seventh Circuit has routinely "applied the Fourth Amendment's 'objectively unreasonable' standard to both 'conditions of confinement' and 'medical care' claims brought by arrestees who have not yet had their *Gerstein* [probable cause] hearing." *Currie v. Chhabra*, 728 F.3d 626, 629 (7th Cir. 2013) (listing cases).

Although the Sixth Circuit noted the absence of any "logical distinction between excessive force claims and denial of medical care claims when determining the applicability of the Fourth Amendment," it reserved determination of the issue "for a more appropriate case." *Boone v. Spurgess*, 385 F.3d 923, 934 (6th Cir. 2004). In *Schliewe v. Toro*, however, the Sixth Circuit later applied the Fourth Amendment to an arrestee's excessive force claim and the deliberate indifference standard to his denial of medical treatment claim without any further discussion. 138 F. App'x 715, 722 (6th Cir. 2005).

Without explanation, the Ninth Circuit simultaneously applied the Fourth Amendment to excessive force claims brought by a pre-arraignment detainee while evaluating his medical care claim under the substantive Due Process clause of the Fourteenth Amendment. *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003).

District courts within the Third Circuit have, in some cases, reluctantly applied the Due Process clause while noting that the question of whether a "uniform standard" should apply to all claims arising out of post-arrest but pre-arraignment detention "is a matter best resolved by the court of appeals." *Hill v. Algor*, 85 F. Supp. 2d 391, 409 n.27 (D.N.J. 2000).

*Freece v. Young*, 756 F. Supp. 699, 703 (W.D.N.Y. 1991); *see also Quint v. Dunaj*, No. 3:02 Civ. 2053 (AVC) (TPS), 2006 WL 167563, at *6 (D. Conn. Jan. 20, 2006) ("This court agrees with the reasoning of the Western District of New York in *Freece* that the holding in *Powell* seems to require that all claims arising prior to arraignment be considered under the Fourth Amendment."); *Blake v. Base*, No. 90 Civ. 0008, 1998 WL 642621, at *11 (N.D.N.Y. Sept. 14, 1998) ("[Plaintiff's] excessive force claim, occurring as it did prior to his arraignment and arising out of his treatment following his arrest, is more appropriately analyzed under the Fourth Amendment."). There is no apparent reason why *Powell* would not broadly "require application of the Fourth Amendment at least until plaintiff's pretrial custody status is ordered by a judicial officer[.]" *Freece*, 756 F. Supp. at 703.

The Court notes that the Second Circuit analyzed claims for denial of medical treatment under the deliberate indifference standard on two occasions. *See Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).[5] In *Weyant*, the plaintiff was already in need of insulin in connection with his severe diabetes at the time of his arrest. *Id.* at 848. Even as the plaintiff's condition worsened in the police car, the defendant officers refused to take him to a hospital and instead transported him to the police barracks. *Id.* at 849. The Second Circuit assessed the plaintiff's claims under the Due Process clause in concluding that "a reasonable jury could infer that . . . [the defendants] . . . denied him such [immediate medical] care because they were deliberately indifferent to that need [for medical attention]." *Id.* at 857. Thus, as in the instant case, the claim arose during the period between the arrest and arraignment. More recently, the Second Circuit stated "when such [denial of medical care] claims arise in the course of pretrial arrest and

---

[5] Defendant's opposition papers cite *Weyant*. Doc. 111 at 9-10. Plaintiff's reply fails to address or distinguish the Second Circuit's decision. *See* Doc. 120.

12

detainment, we evaluate them under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment."[6]  *Mills v. Fenger*, 216 F. App'x 7, 10 (2d Cir. 2006).

Nonetheless, in neither of these cases did the Second Circuit explain why it applied the Due Process clause instead of the Fourth Amendment, apparently overlooking the latent inconsistency that is implicated in this case.  Furthermore, in *Weyant*, the Second Circuit cited a Supreme Court decision from 1983 in support of its determination that the Due Process clause was applicable because the plaintiff was a pretrial detainee.  101 F.3d at 856 (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).  The 1983 decision stated, in *dicta*, that the Due Process Clause requires "the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police."  *City of Revere*, 463 U.S. at 244.  However, not only did the case involve a city's liability to a private hospital for medical services it provided to a person shot by a police officer; it also preceded the Supreme Court's holding in *Graham*, which at least suggested that the Fourth Amendment is applicable to excessive force claims brought by arrestees.  *See* 490 U.S. at 394.

The reasoning present in decisions applying the Fourth Amendment to pre-arraignment medical care claims is consistent with the Second Circuit's approach to pre-arraignment excessive force claims.  It is also in line with the Supreme Court's observation that a pretrial detainee is someone who has had a "judicial determination of probable cause as a prerequisite to

---

[6] The *Mills* court further noted that, at the time, it was "not clear in the Fourteenth Amendment context whether a plaintiff must show subjective awareness of the condition on the part of the official or may rely on an objective standard." 216 F. App'x at 10.  However, the Second Circuit later determined that "an injured state pretrial detainee, to establish a violation of his Fourteenth Amendment due process rights, must prove . . . that the government-employed defendant disregarded a risk of harm to the plaintiff of which the defendant was aware." *Caiozzo v. Koreman*, 581 F.3d 63, 71 (2d Cir. 2009).

[the] extended restraint of [his] liberty following arrest." *Bell v. Wolfish*, 441 U.S. 520, 536 (1979) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) (internal quotation marks omitted). As the Sixth Circuit explained, "[a] seizure can be 'unreasonable' for any number of reasons, and the guarantee of reasonableness in the manner of a seizure does not seem to allow for a distinction between a claim that an officer used excessive force and a claim that the same officer denied medical care to a detainee." *Boone*, 385 F.3d at 933.

In applying the Fourth Amendment to Plaintiff's denial of medical care claim, the outcome of the March 31 Order remains the same. Under the Fourth Amendment standard, the court must decide "whether the asserted denial of medical treatment was objectively unreasonable 'focusing on the circumstances confronting the police at the time of the arrest without regard to their underlying motives or attitude towards the suspect[.]'" *Freece v. Young*, 756 F. Supp. at 701 (quoting *Miller v. Lovett*, 879 F.2d 1066, 1070 (2d Cir. 1989)). The Seventh Circuit has identified four factors that are relevant to assessing the objective reasonableness of an officer's conduct in the denial of medical care context: (1) whether the officer had notice of the arrestee's medical need; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) law enforcement's interests, including administrative, penological, or investigatory concerns. *Williams*, 509 F.3d at 403 (internal citations omitted).

Here, factual disputes as to whether Plaintiff was actually experiencing an asthma attack "are prevalent on the record." *Id*. at 16. Thus, the entire basis for Plaintiff's deliberate indifference claim—the very existence of a medical condition—is a fact in dispute. The Court previously determined that the Defendant was "not entitled to summary judgment on the

objective prong," which, by itself, would justify denial of the motion for summary judgment under the Fourth Amendment in this instance.[7] *See* Doc. 52 at 18.

### III.  Conclusion

For the foregoing reasons, Plaintiff's motion for reconsideration is GRANTED. The Court nonetheless adheres to the original outcome set forth in the March 31 Opinion and Order. The Clerk of the Court is directed to close this motion, Doc. 105.

It is SO ORDERED.

Dated:  December 8, 2014
         New York, New York

                                                                Edgardo Ramos, U.S.D.J.

---

[7] When claims alleging lack of medical care are evaluated under the Due Process clause, the standard applied is the same as if they were brought under the Eighth Amendment. *See Caiozzo*, 581 F.3d at 69-72. The analysis contains both objective and subjective prongs. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To satisfy the objective prong, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). To be "sufficiently serious," there must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway*, 37 F.3d at 66 (quoting *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). To satisfy the subjective prong, the plaintiff must demonstrate that "the charged official . . . act[ed] with a sufficiently culpable state of mind." *Id.* The requisite state of mind is the equivalent of criminal recklessness, wherein "the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).